UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ROBERT RAY OWEN | CIVIL ACTION NO. 07-cv-0177 |
| VERSUS | JUDGE STAGG |
| SHERIFF'S DEPARTMENT WEBSTER PARISH, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Robert Ray Owen ("Plaintiff") is a former inmate at the Bayou Dorcheat Correctional Center. He complains that, during his stay at the facility, nurse Sherry Bagwell deprived him of proper care for his psoriasis and in connection with dental care. Plaintiff also names as defendants Sheriff Gary Sexton, Warden Steve Risner, and Sgt. Paul Smith. Before the court is a Motion for Summary Judgment (Doc. 36) filed by defendants. It is recommended, for the reasons that follow, that the motion be granted.

**Summary Judgment Standard**

Summary judgment is proper when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. All facts and inferences must be construed in the light most favorable to the non-movant. Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 248 (5th Cir. 2008). But where the non-moving party fails to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial, no genuine issue of material fact can exist. McLaurin v. Noble Drilling (US) Inc., 529 F.3d 285, 288 (5th Cir. 2008).

**Limitations Defense**

Plaintiff's complaint describes events that allegedly happened in 2005 and 2006. A Section 1983 claim filed in a Louisiana court is subject to a one-year period of limitations. Elzy v. Roberson, 868 F.2d 793 (5th Cir. 1989). Plaintiff filed his complaint in January 2007. Defendants assert that any events that occurred before January 2006 are subject to a limitations or prescription defense.

The limitations period may be suspended during the exhaustion of administrative remedies. Harris v. Hegmann, 198 F.3d 153, 158-59 (5th Cir. 1999). Plaintiff alleges that there was a grievance procedure in place at the institution and that he filed grievances, but he asserts that he never received a response. Defendants have not raised an exhaustion defense or otherwise discussed whether a grievance system is in place and what effect it has upon limitations, but presumably any suspension of the limitations due to Plaintiff's failed effort to seek administrative relief would be relatively short in duration. Fortunately, pinpoint precision with respect to the limitations period is not necessary in this case. It is adequate to determine that most if not all of the events that Plaintiff alleges happened in 2005 are almost certainly time barred.

**Summary Judgment Record**

Nurse Sherry Bagwell sets forth in an affidavit Plaintiff's medical history at the facility from 2005 through Plaintiff's transfer in mid-2006. The 2005 events, though likely time barred, are relevant to show the nature of medical care afforded Plaintiff.

Nurse Bagwell testifies that Plaintiff has been in and out of Webster Parish jails since 1998. He has had psoriasis during that time, and he has established a pattern of failing to obtain proper treatment when he is not incarcerated. Plaintiff's most recent incarceration mentioned in his complaint began on July 6, 2005, after Plaintiff had been free for about two years. It was determined that Plaintiff had missed some dermatology appointments during the interim. About two weeks after entering the correctional center in July 2005, Plaintiff was seen by Nurse Bagwell for complaints of psoriasis and a sore on his left eye. She scheduled Plaintiff to see a doctor the following day, and Plaintiff was treated by Dr. Heard the next day.

Plaintiff complained in July 2005 that someone had stolen his baby oil that he used to treat dry skin. Plaintiff reported that his eye was "much better." Nurse Bagwell replied that the baby oil had just been given to Plaintiff 12 days earlier, there was no way Plaintiff could have used it all in that time, and that if it was stolen Plaintiff should keep up with his things a little better. She told Plaintiff that if he wanted another bottle he would have to purchase it from the commissary.

Plaintiff's medical records from August 2005 include a request for medication for inflammation, results from an examination by Dr. Heard, a request for two prescriptions to be refilled (to which Nurse Bagwell responded that the prescriptions had been filled and sent to the dorm), and a complaint by Plaintiff that the Prednisone prescribed by his doctor was not strong enough. Bagwell told Plaintiff that the Prednisone would be given as prescribed by the physician. Plaintiff, during August, requested a refill of his "itch pills," copies of some pictures of his skin, and additional baby oil. Bagwell replied that the pills had been refilled, that the pictures would have to be obtained through assistance of counsel, and that baby oil could be purchased in the commissary.

In September 2005 Plaintiff complained of pain in his sides and stomach. Nurse Bagwell evaluated him the next day, and a physician examined Plaintiff the day after that. Urinalysis and hepatic function panels were performed in connection with these complaints. About the same time, Nurse Bagwell checked Plaintiff's inmate trust fund and saw a balance of more than $24. She made this check to ensure that Plaintiff had enough resources to purchase additional baby oil at the commissary if he used the supply previously given him.

Plaintiff complained in November 2005 that he was out of all of his medications except for shampoo. Nurse Bagwell responded that she had refilled a prescribed pill and some creams and sent them to the housing unit.

On January 9, 2006, a date that is likely outside the period of limitations, Plaintiff was caught trying to smuggle tobacco into the facility when he returned from a work crew detail.

His cell was then searched, and deputies reported to Nurse Bagwell that certain medications were found in the cell. Plaintiff soon submitted a request for refills of his medicine. Bagwell responded a few days later that Plaintiff had been found with contraband in the form of the medications listed, and no refills were needed at the present time.

The next events, beginning in March 2006, are within the limitations period. Plaintiff complains that he was told it would be a two-year wait to have the correctional facility fund treatment of his severe teeth problems, but Plaintiff was allowed to be taken to his private dentist, Dr. Campbell, whom he paid approximately $1,500 to pull several teeth and fit him with dentures. Dr. Campbell began by pulling three teeth and prescribing an antibiotic to prevent infection and Tylenol for pain. Two days later, Plaintiff submitted a request for Betamethasone, one of his medications, and Nurse Bagwell refilled it. She also gave him information about an appointment at LSU-MC.

Plaintiff was charged with a disciplinary violation on March 22, 2006, after deputies found medications in his cell that Nurse Bagwell testifies were to be taken on a daily basis when provided to the inmate. Bagwell testifies that she completed a disciplinary report because Plaintiff was hoarding the medication so that it was considered contraband. The medication included the antibiotic prescribed by Dr. Campbell and Atavax (prescribed for psoriasis). Plaintiff soon filed a request for a refill of his "itch pill" and antibiotics. Nurse Bagwell responded:

> Robert, hoarding medication is an automatic discontinuation of medication. Your 'itching meds' have been pulled. I suggest in

> the future when you ask for meds you take them at the time they
> are given. You do not save them for future use.

Nurse Bagwell testifies that the topical creams given to Plaintiff for his psoriasis were not discontinued.

Plaintiff returned to the dentist about five days later to be fitted for dentures. Bagwell informed Dr. Campbell that Plaintiff had been non-compliant in taking his antibiotics and that the medication had been discontinued. The next scheduled visit to Dr. Campbell had to be rescheduled because Plaintiff, in violation of security rules, called the dentist office to find out the time of his appointment.

Plaintiff reported a staph infection of his right knee in April 2006. Nurse Bagwell evaluated Plaintiff the next day and, on Dr. Heard's order, gave a prescription for Bactrim DS. Plaintiff made five visits to Dr. Campbell's office during April 2006. On one visit, teeth were extracted, and Dr. Campbell gave Plaintiff two Tylenol and wrote in his notes that Plaintiff would need more Tylenol for pain. Plaintiff has alleged in his unsworn pleadings and memoranda that Dr. Campbell prescribed Tylenol, Ibuprofen, or other medicine for pain. The physician notes from the certified medical record of the April 25, 2006 visit at issue state: "gave him 2 Tylenol. He will need more for his pain will be significant." Nurse Bagwell explains in her affidavit that the dentist did not issue an actual prescription for Ibuprofen, but Ibuprofen was available in the housing units to be provided by the correctional officers at the request of the inmates. Bagwell states that no nurse or doctor approval is needed for dispensing Ibuprofen, which would have been readily available to Plaintiff.

Plaintiff alleges that Ibuprofen was not available, but his unsworn submissions are not competent summary judgment evidence. He also charges that Defendants cannot prove that he actually received Ibuprofen, but that is not their burden on summary judgment.

Plaintiff requested on May 4, 2006 that his Betamethasone cream and Davenex be refilled, and Nurse Bagwell refilled those prescriptions the next day. On May 1, May 5, and May 8, 2006, Plaintiff went to the dentist office for continued care related to his new dentures. Dr. Campbell stated at the last visit that he would not need to see Plaintiff again unless a sore spot developed.

Plaintiff submits material that indicates exposure to sunlight may be beneficial to psoriasis. He complains that a request for outside recreation in May 2006 was denied. Nurse Bagwell testifies that the request was denied as part of discipline related to Plaintiff being caught smoking a cigarette, which is contraband in the facility. Bagwell responded that the short-term loss of privilege would not be detrimental to Plaintiff's health, and she testifies that she determined that Plaintiff's condition would not be substantially worsened by lack of outdoor recreation for the duration of the disciplinary restriction.

Plaintiff complained on June 8, 2006 that his psoriasis was inflamed and that he was out of both of his topical creams. Nurse Bagwell refilled the creams and a prescription for Hydroxyzine for Plaintiff's complaints of itching. She warned Plaintiff that the medication would be discontinued if it were hoarded or traded. Later that month, Plaintiff reported a big bump on his buttock. Nurse Bagwell examined Plaintiff the next day, gave him instructions

for care, and on order of Dr. Heard, started Plaintiff on Bactrim. Plaintiff was soon thereafter scheduled for transfer to a different facility. A medical record transfer summary was completed, and it showed that Plaintiff was receiving several medications including Atarax (a brand name of Hydroxyzine), two topical creams, and a special shampoo. A dermatology consult at LSU-MC was pending. That information was provided to the new facility.

**The Constitution and Inmate Medical Care**

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Analysis and Conclusion**

**A. Nurse Bagwell**

The competent summary judgment evidence shows that Plaintiff made frequent requests for refills of his medication or treatment for various complaints. It also shows that Nurse Bagwell almost always responded within one day by giving Plaintiff the medications

he requested or an examination, often involving a consultation with a physician. Plaintiff alleges in his unsworn submission that Bagwell should not have denied his medication on the charge of hoarding, which Plaintiff asserts was dismissed because he was not guilty. Plaintiff attempts to explain that it was not required that he take the medications at the moment they were given to him and that he was merely keeping one day's medication until he could take them with a meal and prevent stomach problems. Even if there were competent summary judgment evidence to support these assertions by Plaintiff, summary judgment would still be warranted under the demanding Eighth Amendment standard that applies. There is no hint that Plaintiff contracted any infection because the antibiotics were discontinued, and the record shows that Nurse Bagwell informed the dentist of this change in medications.

Plaintiff's psoriasis is obviously a significant medical problem. Plaintiff has not always received the precise care that he desired to treat the condition, but the summary judgment record reflects adequate care to withstand review under the "deliberate indifference to serious medical needs" standard. Plaintiff only occasionally had to do without one or two of his several medications for relatively brief periods of time, and he was also denied outdoor recreation and exposure to sunlight on a temporary basis. The recreation denial was rooted in a disciplinary infraction. That sunlight is often helpful to some psoriasis patients is not enough to preclude jail officials from temporarily denying outdoor recreation, which is a common form of discipline, especially when inmates have few other privileges subject to removal.

The temporary unavailability of the free baby oil that Plaintiff covets presents a similar situation. The 2005 incident is almost certainly time barred, but it also fails on the merits. Nurse Bagwell saw that Plaintiff had enough funds in his account to buy his own baby oil just a few weeks after she declined to provide more free oil. Plaintiff argues that there is no evidence he had adequate funds in the intervening weeks, and that is correct. But the Constitution does not guarantee that a prisoner with psoriasis must have an unlimited supply of free baby oil. Nurse Bagwell's response seems reasonable under the circumstances, with free baby oil provided just days earlier and more oil available for purchase at any time. Those facts do not suggest deliberate indifference or an unlawful intent to inflict pain or suffering.

Plaintiff has disagreed with some of the details of his medical treatment received while incarcerated, but it is undeniable that Plaintiff has received prompt and continual medical care throughout his stay at the Dorcheat facility. Reasonable minds could perhaps differ as to whether Nurse Bagwell should have discontinued oral psoriasis medications and antibiotics based on her belief that Plaintiff was hoarding the medications, but there is no basis for a reasonable juror to conclude from this record that an Eighth Amendment violation resulted. There is no competent summary judgment evidence that any infections or other symptoms resulted or were significantly increased during the time the medication was not administered. Nurse Bagwell is entitled to summary judgment with respect to all claims against her.

### B. Sexton, Risner, and Smith

Plaintiff also named as defendants Sheriff Gary Sexton, Warden Steve Risner, and Sgt. Paul Smith. It is not evident from the complaint why these men were sued. Each of them offers an affidavit that he was not personally involved in providing medical care to Plaintiff at any time and was not aware of any unmet serious medical need that Plaintiff had during his incarceration at the Dorcheat facility.

Plaintiff was asked in interrogatories to list the facts to support any contention that the men violated a constitutional right. Plaintiff responded that Sheriff Sexton was his friend and that he "personally did not violate my rights," only the "people under his authority did." With respect to Warden Risner, Plaintiff responded by talking about a riot at the jail that is far beyond the scope of his complaint. Plaintiff wrote that Sgt. Smith was present when Nurse Bagwell returned his medications so was a witness in the case.

The doctrine of respondeat superior does not apply to Section 1983 claims, so a sheriff, warden, or other supervisor is not liable based on the mere conduct of a subordinate. Stewart v. Murphy, 174 F.3d 530, 536 (5th Cir. 1999). Liability under Section 1983 requires personal involvement in a constitutional violation or at least a causal connection to the violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). Defendants have squarely challenged Plaintiff to come forward with competent summary judgment evidence that they were involved in any constitutional violation. Plaintiff has not satisfied his burden

of responding with competent summary judgment evidence to create a genuine issue of material fact in this regard, so all claims against these three men should also be dismissed.

Accordingly;

**IT IS RECOMMENDED** that the Motion for Summary Judgment (Doc. 36) be **granted** and that Plaintiff's complaint be **dismissed** as to all defendants.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of September, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE